**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JENNIFER M. HYKES,**

    **Plaintiff,**

v.                                      **CASE No.:**

**THE SCHOOL BOARD OF**
**PINELLAS COUNTY, FLORIDA,**

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JENNIFER HYKES ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant, THE SCHOOL BOARD of PINELLAS COUNTY, FLORIDA ("Defendant"), and in support of her claims state as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action for damages resulting from Defendant's deprivation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983") for Florida and federal civil rights violations under U.S. Const. amend. I as applied to the states under the United States Constitution's Fourteenth Amendment.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1333 and 28 U.S.C. § 1343.

3. Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Pinellas County, Florida.

## PARTIES

4. Plaintiff is a resident of Pinellas County, Florida and a former employee of Defendant.

5. Defendant is a political subdivision possessing authority under Article IX, Section 4(b), Fla. Const., to operate, control, and supervise all free public schools located in Pinellas County, Florida and with the home rule authority to exercise any power except as expressly prohibited by the State Constitution and general law. Its principal place of business is at 301 4th Street SW, Largo, Florida 33770. With respect to the employment decisions at issue in this lawsuit, the acts of the individuals named herein were the official acts of Defendant.

## NATURE OF THE CASE

6. Plaintiff is a member of a protected class because she engaged in protected activity by opposing Defendant's unconstitutional employment practices that were outside the scope of her employment and was subject to retaliation when Defendant terminated Plaintiff's employment on or about May 2018.

7. Defendants committed these unlawful violations of Plaintiff's constitutional, statutory, and federal rights and state rights under color of state law in bad faith and with malicious purpose and in reckless, willful, and wanton disregard of Plaintiff's safety, dignity, and her constitutional rights. Defendant condoned the practices that Plaintiff complained about, despite knowledge that Defendant's conduct was unlawful and rose to the level of gross mismanagement, gross neglect of duty, and violation of Plaintiff's civil rights as described herein.

## GENERAL ALLEGATIONS

8. Plaintiff has satisfied all conditions precedent, or they have been waived.

9. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

10. Plaintiff requests a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

11. Plaintiff began working for Defendant as an Assistant Director of Defendant's Community Schools Model on November 2017, and she worked in this capacity until May 2018.

12. Prior to her termination, Plaintiff has continually worked for the Florida public system since August 2003.

13. During the time she worked with Defendant, Plaintiff satisfactorily performed the responsibilities of her position in a competent manner and met the legitimate expectations of her employer.

14. Nevertheless, Defendant violated Plaintiff's due process rights under the Fourteenth Amendment and acted in accordance with its official policies and customs by publishing false statements of a stigmatizing nature attending a governmental employee's discharge that were made public by the governmental employer without a meaningful opportunity for employee name clearing.

15. The Fourteenth Amendment of the United States Constitution provides that, "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[1]

16. On or about April 27, 2018, Plaintiff requested a meeting with her supervisor, Defendant's Director of its Title I program, Felita Grant, regarding the Coalition for Community Schools National Conference.

---

[1] Public employment is a constitutionally protected property interest. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

17. Although the conference and the cost associated with it were previously approved by Defendant, Defendant abruptly informed Plaintiff that it would not be sending the two (2) community representatives to the conference.

18. Plaintiff expressed legitimate concerns regarding how Defendant's decision could negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives and again requested a meeting. Grant then scheduled a meeting with Plaintiff.

19. Plaintiff assumed the meeting was to discuss the negative implications associated with withdrawing from the conference as she was the one who originally requested it.

20. However, instead of discussing the conference, Defendant ambushed Plaintiff with false accusations relating to her job performance. Defendant did not provide notice to Plaintiff that the meeting was disciplinary in nature or that the topics to be discussed were related to her job performance. The meeting occurred on April 30, 2018.

21. When Plaintiff arrived for the meeting, she noticed that Defendant's director had a copy of the agenda of topics to be discussed regarding Plaintiff's job performance. Defendant did not provide Plaintiff with a copy of the agenda or allow her to prepare for the accusations that were going to be levied against her in any way.

22. When Plaintiff noticed that Grant's secretary was also in attendance and taking notes, Plaintiff asked Grant if the meeting was in relation to her job performance. Grant deflected Plaintiff's question by simply responding that she "didn't say that".

23. Plaintiff then discussed the items on Grant's agenda and provided explanations and status updates of each topic that Grant raised. Additionally, Plaintiff and Grant discussed and additional future steps that needed taken in order to reach the Community Schools Model objectives.

24.     The next day, Plaintiff was then called back to Grant's office to review and sign a copy of the "Conference Summary" regarding the meeting that occurred the previous day. The conference summary, written and prepared by Defendant, did not indicate to Plaintiff that her employment would be terminated.

25.     Upon reading the Conference Summary, Plaintiff immediately realized that her responses to Defendant's questions were largely omitted in the Conference Summary. Plaintiff asked why the Conference Summary stated "CC: Personnel File" if the earlier meeting was not disciplinary. Grant simply replied that it would be included in Plaintiff's personnel file because "that is the procedure for written summaries".

26.     Plaintiff objected and informed Grant that, pursuant to Florida law, since the summary was going into Plaintiff's personnel file, she intended to file a written response.

27.     Pursuant to Fla. Stat. § 1012.31 provides that:

(2)(a) Materials relating to work performance, discipline, suspension, or dismissal must be reduced to writing and signed by a person competent to know the facts or make the judgment.

…
(2)(d) **An employee has the right to answer in writing any such materials** [relating to work performance, discipline, suspension, or dismissal] in a personnel file on July 1, 1983, as well as any such materials filed thereafter, **and the answer shall be attached to the file copy**. An employee has the right to request that the district school superintendent or the superintendent's designee make an informal inquiry regarding material in the employee's personnel file which the employee believes to be false. The official who makes the inquiry shall append to the material a written report of his or her findings.

(emphasis added).

28.     Despite the plain language of the statute and the stigmatizing nature of the allegations that were set to be included in Plaintiff's public personnel file, Defendant informed her there was "no reason to provide a written response".

29. When Plaintiff further asserted her right to respond to the allegations, Defendant terminated Plaintiff's employment in retaliation for her request to include a response to the allegations that Defendant levied against her. Defendant informed Plaintiff that her contract was not going to be renewed so there was no reason for Plaintiff to provide a response. When Plaintiff asked why she was being terminated, Grant callously responded, stating that "we don't have to provide a reason".

30. In fact, Defendant violated its own policies and procedures as Defendant's deadline to provide notice of nonrenewal was in April, however Plaintiff was informed she would not be renewed in May 2018 only after she insisted on including responses to Defendant's allegations.

31. On or about May 2018, Plaintiff drafted, a response to the allegations placed in her personnel file and submitted the response to various public officials, including but not limited to: Superintendent Michael Grego, Assistant Superintendent of Human Resources Paula Texel, and Associate Superintendent of Community and Support Services Lori Matway on at least two occasions.

32. Defendant's officials, despite their statutorily-defined duty to investigate Plaintiff's alleged infringement of her civil rights, failed to take appropriate action despite Plaintiff's requests for review.

33. Instead, Defendant again informed Plaintiff that "a response is not needed" and unlawfully refused to place Plaintiff's written response to the allegations levied against her in her personnel file.

34. By refusing to place Plaintiff's response to Defendant's written accusations in her personnel file, Plaintiff was not provided with an opportunity to be heard as to the truth or falsity

of the alleged allegations, nor was Plaintiff given an opportunity to clear her name. Plaintiff was not even asked the rudimentary, "guilty or not guilty". [2]

35. Defendant failed to inform Plaintiff of her right to respond to the allegations or opportunity to clear her name.

36. Furthermore, despite Plaintiff's role as a high-level administrator who had minimal contact with children, Defendant misrepresented the nature of the aforementioned incident in Plaintiff's public personnel file in order to curtail Plaintiff's future career opportunities when Defendant defined Plaintiff's termination as "**Victim Code: Student**" in Plaintiff's personnel file.[3]

37. Plaintiff has suffered monetary harm as a result of Defendant's retaliatory conduct.

38. These statements are public record and are available to be viewed by person and at any time pursuant to Fla. Stat. § 119.01(1). *See also* Fla. Stat. § 119.07(1)(a), "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee."

39. Despite the severity of the conduct engaged in by Defendant's officials, Defendant's officials were acting in conformity with Defendant's custom and policies of not including employee responses to allegations made by Defendant in their personnel files. The aforementioned employment practices of Defendant are so persistent, widespread, and repetitious

---

[2] *See Owen v. Independence*, 445 U.S. 622, 633 n.13, 100 S. Ct. 1398, 1406 n.13, 63 L. Ed. 2d 673 (1980). The dismissal of a governmental employee accompanied by a charge against her that might seriously damage her standing and associations in her community would qualify as something the government is doing to her so as to trigger the due process right to a hearing during which the employee could refute the charges and publicly clear her name. Even if the accusations did not in point of fact cause the individual's discharge, the defamatory and stigmatizing charges implicate the liberty interests if they occurred in the course of the termination of employment).

[3] *See Codd v. Velger*, 429 U.S. 624, 628 (1977) (Creation and dissemination of a false and defamatory impression about the employee is public).

that Defendant's policy makers either knew or should have known of the unlawful employment practices.

40. Defendant's decision to not include Plaintiff's written responses as required by statute was arbitrary, capricious, and meant to sully Plaintiff's good name. Defendant could have simply placed Plaintiff's responses to the accusations in her personnel file and properly investigated the incident. Instead, Defendants chose to publicly shame and punitively punish Plaintiff for objecting to Defendant's deprivation of her due process rights.[4]

41. Plaintiff reported and disclosed in writing and/or verbally violations of rules, regulations and laws to persons both inside and outside of her normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported.

42. Defendant retaliated by taking unlawful and adverse action against Plaintiff under color of state law because Plaintiff exercised her constitutional right to free speech on matters of public concern by terminating her employment on or about May 2018.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983
## DEPRIVATION OF LIBERTY INTEREST

43. Plaintiff realleges and incorporates by reference paragraphs 1 through 42 as though fully set forth herein.

44. Defendant terminated Plaintiff from her public employment in May 2018. Defendants falsely, maliciously, and with full intent, alleged that Plaintiff had committed a grievous offense and was otherwise not fit for her position.

45. Defendant's allegations were unfounded and false.

---

[4] *See Bd. of Regents v. Roth*, 92 S. Ct. 2701, 2707-08 (1972) (To be deprived not only of present government employment but of future opportunity for it certainly is no small injury).

46. Defendant's decision to terminate Plaintiff's employment was arbitrary, capricious, and in retaliation for her asserting her rights pursuant to Florida Statute.

47. Defendant's, publicly communicated and insinuated false and unfounded allegations of a stigmatizing nature about Plaintiff contemporaneously, and in conjunction with, its decision to terminate Plaintiff' public employment.[5]

48. Defendant has caused substantial damage to Plaintiff's reputation in the community.

49. Plaintiff has a constitutionally protected liberty interest in her good name and her reputation for honesty and integrity. Defendant deprived Plaintiff of her constitutionally protected liberty interest in her good name and her reputation as being a person of honor and integrity by including defamatory statements about her in her personnel file and by refusing to allow Plaintiff to include a response.

50. Defendant denied Plaintiff due process of law by failing to provide notice to Plaintiff of her right to a name clearing hearing.

51. Defendant denied Plaintiff due process of law by refusing to provide a name clearing hearing with respect to the false, unfounded allegations surrounding the termination of her employment.

52. As a result, Plaintiff's ability to earn a living in the local community has been severely compromised. Defendant deprived Plaintiff of her constitutionally protected liberty interest without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Defendant is liable to Plaintiff under 42 U.S.C. § 1983.

---

[5] *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515 (1971) (Where the state attaches a badge of infamy to the citizen, due process comes into play. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential).

53. As a direct and proximate result of Defendant's violation of her civil rights, Plaintiff has suffered damages.

*WHEREFORE*, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) That this Court issue a writ of mandamus to Defendant to provide Plaintiff with a name-clearing hearing;

(d) Judgment against Defendant, permanently enjoining Defendant from future violations of 42 U.S.C. § 1983, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(e) Compensatory damages, including emotional distress, allowable at law;

(f) Reinstatement of Plaintiff to a position comparable to prior position, or in the alternative, front pay;

(g) Prejudgment interest on all monetary recovery obtained;

(h) All costs and attorney's fees incurred in prosecuting these claims; and

(i) For such further relief as this Court deems just and equitable.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983
## FREEDOM OF SPEECH VIOLATION

54. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 42 of this Complaint, as though fully set forth herein.

55. Under the First Amendment to the Constitution of the United States, a public employee has a right to freedom of speech on matters of public concern. It is unlawful for a public

employer to take adverse action against a public employee because the employee exercises her First Amendment rights by speaking on a matter of public concern.[6]

56. Plaintiff's job duties did not include demanding that statutorily-defined duties be carried out by the administrative personnel attending her discharge.

57. As noted by the Supreme Court of the United States of America, "public employees are uniquely qualified to comment on matters concerning government policies that are of interest to the public at large." *Id.* at 2379-80 (citations omitted).

58. Plaintiff engaged in protected activity by reporting and opposing Defendant's aforementioned unlawful conduct.[7]

59. Defendant's actions were "under color" of state law.

60. Defendant's deprivation of Plaintiff's constitutionally protected rights was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. Sch. Bd.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted).

61. "A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted), *cert. denied*, 522 U.S. 1075 (1998).

62. In retaliation for Plaintiff's exercise of her constitutional right to freedom of speech, Defendant terminated Plaintiff's employment on or about May 2018.

---

[6] "[T]he mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee – rather than citizen – speech. " *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

[7] *See Tindal* at 1539; *see also Connick v. Myers*, 103 S. Ct. 1684 (1983) "Plaintiff's speech clearly involves matter of public concern because the testimony "brought to light actual or potential wrongdoing...."

63. Plaintiff's protected speech was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

64. As a result of Defendant's retaliatory conduct, Plaintiff has suffered damages as a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

*WHEREFORE*, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1983, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d) Compensatory damages, including emotional distress, allowable at law;

(e) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

(f) Prejudgment interest on all monetary recovery obtained;

(g) All costs and attorney's fees incurred in prosecuting these claims; and

(h) For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 8th day of April, 2020.

Respectfully submitted,

*/s/ Patrick K. Elliott*
**PATRICK K. ELLIOTT**

Florida. Bar Number: 1000970
**THE LAW OFFICE OF PATRICK K. ELLIOTT, PLLC**
100 S. Ashley Drive, Suite 600
Tampa, FL 33602
Direct Dial: (813) 379-3090
Facsimile:   (813) 433-5126
E-mail: elliottp@employmentandconsumerlaw.com
E-mail: assistant@employmentandconsumerlaw.com
*Attorney for Plaintiff*