UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JENNIFER M. HYKES,**

    **Plaintiff,**

v.                                                  CASE NO.: 8:20-cv-00806-TPB-SPF

**SCHOOL BOARD OF
PINELLAS COUNTY, FLORIDA,**

    **Defendant.**

_____/

**<ins>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</ins>**

Plaintiff, JENNIFER M. HYKES, ("Plaintiff"), by and through undersigned counsel, hereby files this Response in Opposition to Defendant's, SCHOOL BOARD OF PINELLAS COUNTY, FLORIDA ("Defendant"), Motion to Dismiss Plaintiff's Complaint. As more fully set forth herein, this Court should deny Defendant's motion because it is nothing more than an attempt to hold Plaintiff's Complaint to a heightened pleading standard than what is required. Further, Plaintiff's Complaint contains numerous factually specific and detailed allegations that not only make her claims plausible, but probable. Therefore, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint and allow Plaintiff to proceed with discovery and flesh out the details of her case so that it can be decided on the merits. In support of her motion, Plaintiff states as follows:

## **TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................1

ARGUMENT .....................................................................................................................................4

I.    STANDARD OF REVIEW................................................................................................5

II.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE SHE WAS NOT REQUIRED TO EXHAUST ANY PURPORTED ADMINISTRATIVE REMEDIES................................................................6

III.  THIS COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BECAUSE PLAINTIFF SUFFICENTLY ALLEGED THAT DEFENDANT VIOLATED HER LIBERTY INTEREST UNDER SECTION 1983. ...............................7

    A.    Defendant's Retaliatory Conduct Represents its Official Government Custom or Practice Because it Was Made by Defendant's Authorized Decisionmakers. ........................................................................................................8

        1.    Defendant's Failure to Train its Decisionmakers Demonstrates Defendant's Official Governmental Policy of Adequate Training and Supervision. ......................................................................................10

IV.  PLAINTIFF PROPERLY ASSERTED A FREE SPEECH RETALIATION CLAIM. ............................................................................................................................11

    A.    Plaintiff's Attempted Speech Can Easily Be Characterized as a Matter of Public Concern. .................................................................................................11

    B.    Plaintiff's Interests as a Citizen Subject to A Public Personnel File Outweighed the Unlawful Interests of Defendant. ...............................................14

    C.    Plaintiff Sufficiently Alleged That Her Attempted Speech Played A Substantial or Motivating Role in Defendant's Decision to Take Adverse Employment Action Against Plaintiff. .................................................15

V.   LEAVE TO AMEND ......................................................................................................15

CONCLUSION ................................................................................................................................16

CERTIFICATE OF SERVICE.......................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE(S)**

*Akins v. Fulton County*,
  420 F.3d 1293 (11th Cir. 2005) .............................................................. 12,13,15,16

*Bd. of the County Comm'rs v. Brown*,
  520 U.S. 397 (1997) ........................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 8

*Bryson v. Waycross*,
  888 F.2d 1562 (11th Cir. 1989) ...................................................................... 15

*Buxton v. Plant City*,
  871 F.2d 1037 (11th Cir. 1989) ...................................................................... 10

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ........................................................................................ 11

*Connick v. Myers*,
  461 U.S. 138 (1983) ........................................................................................ 13

*Connick v. Thompson*,
  131 S. Ct. 1350 (2011) .................................................................................... 11

*Edwards v. Prime Inc.*,
  602 F.3d 1276 (11th Cir. 2010) ........................................................................ 8

*Handy-Clay v. City of Memphis*,
  695 F.3d 531 (6th Cir. 2012) .......................................................................... 11

*Holley v. Seminole Cty. Sch. Dist.*,
  755 F.2d 1492 (11th Cir. 1985) ...................................................................... 14

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ................................................................................... 11,13

*Kurtz v. Vickrey*,
  855 F.2d 723 (11th Cir. 1988) ................................................................... 13,14

*McNeese v. Bd. of Educ.*,
  373 U.S. 668 (1963) .......................................................................................... 9

*Morgan v. Ford*,
    6 F.3d 750 (11th Cir. 1993) ............................................................................... 13

*Okla. City v. Tuttle*,
    471 U.S. 808 (1985) ........................................................................................... 11

*Patsy v. Bd. of Regents*,
    457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) ................................... 9

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ........................................................................................... 11

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ........................................................................................... 15

*Saucier v. Katz*,
    533 U.S. 194 (2001) ........................................................................................... 11

*Stanley v. City of Dalton*,
    219 F.3d 1280 (11th Cir. 2000) ......................................................................... 15

*Watts v. Fla. Int'l Univ.*,
    495 F.3d 1289 (11th Cir. 2007) ......................................................................... 8

**STATUTES**

42 U.S.C. § 133City (2018) ................................................................................... 11

42 U.S.C. § 1983 ............................................................................................... 10,14

42 U.S.C. § 1983 (2018) ............................................................................................
*passim*

Fla. Stat. § 119.01(1) ............................................................................................ 7

Fla. Stat. § 1012.31 ............................................................................................... 10

**OTHER**

U.S. Const. amend. XIV, § 1 ................................................................................ 7

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for Defendant as an Assistant Director of Defendant's Community Schools Model, a Title I program[1], on November 2017, and she worked in this capacity until May 2018. (Doc. # 1 ¶ 11). Prior to her termination, Plaintiff has continually worked for the Florida public system since August 2003. (Doc. # 1 ¶ 12).

On or about April 27, 2018, Plaintiff requested a meeting with her supervisor, Defendant's Director of its Title I program, Felita Grant, regarding the Coalition for Community Schools National Conference. (Doc. # 1 ¶ 16). Plaintiff expressed legitimate concerns regarding how Defendant's decision could negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives and again requested a meeting. However, although the conference and the cost associated with it were previously approved by Defendant, Defendant abruptly informed Plaintiff that it would not be sending the two (2) community representatives to the conference. (Doc. # 1 ¶ 17).

After Plaintiff's insistence, Grant then scheduled a meeting with Plaintiff on or about April 30, 2018. (Doc. # 1 ¶¶ 18, 20). Plaintiff assumed the meeting was to discuss the negative implications associated with withdrawing from the conference as she was the one who originally requested it. (Doc. # 1 ¶ 19). However, when Plaintiff arrived, she realized she had been ambushed. Plaintiff noticed that Grant's secretary was also in attendance and taking notes. Plaintiff expressly asked Grant if the meeting was in relation to her job performance. Grant responded that she "didn't say that". (Doc. # 1 ¶ 22).

---

[1] Title I, Part A (Title I) of the Elementary and Secondary Education Act, as amended by the Every Student Succeeds Act ("ESEA") provides financial assistance to local educational agencies ("LEA"s) and schools with high numbers or high percentages of children from low-income families to help ensure that all children meet challenging state academic standards. Federal funds are currently allocated through four statutory formulas that are based primarily on census poverty estimates and the cost of education in each state.

To Plaintiff's shock, the meeting had nothing to do with the Community Schools' Initiative. And although Plaintiff previously possessed an exemplary history in the Florida public school system, Grant suddenly confronted Plaintiff with false job-performance related accusations. Grant failed to provide any notice to Plaintiff as to the nature of the meeting and even seemingly lied or endeavored to withhold the meeting's purpose. Defendant failed to notify Plaintiff whether or not the meeting was disciplinary in nature or that the topics to be discussed were related to her job performance. Regardless, Plaintiff as confident in her work product and she thoroughly discussed and responded to each item on Grant's hidden agenda. (Doc. # 1 ¶ 23).

The next day, on or about May 1, 2018, Grant summoned Plaintiff to her office and was required to review and sign a copy of the so-called "Conference Summary" regarding the prior day's meeting. Initially, Conference Summary, written and prepared by Defendant, did not indicate to Plaintiff that her employment would be terminated. (Doc. # 1 ¶ 24). However, upon reading the Conference Summary, Plaintiff immediately realized that her responses to Defendant's questions about the highly controversial Community Schools Initiative were largely omitted in the Conference Summary.

Plaintiff asked why the Conference Summary stated "CC: Personnel File" if the earlier meeting was not disciplinary. Grant simply replied that it would be included in Plaintiff's personnel file because "that is the procedure for written summaries". (Doc. # 1 ¶ 25). Plaintiff objected and informed Grant that, pursuant to Florida law, since the summary was going into Plaintiff's personnel file, she intended to file a written response. (Doc. # 1 ¶ 26).[2] Yet, despite the

---

[2] Although discussed herein, Fla. Stat. § 1012.31 provides that all materials relating to work performance placed in a teacher's personnel file must be signed by a person competent to know the facts or make the judgment and that an employee has the right to answer in writing any such materials **relating to work performance, discipline, suspension, or dismissal**. (emphasis added).

plain language of the statute, Defendant informed her there was "no reason to provide a written response". (Doc. # 1 ¶ 28).

Plaintiff demanded that her responses about the Community Schools Initiative be included in her personnel file. Despite no prior indication to the contrary, Defendant suddenly terminated Plaintiff's employment in retaliation for her repeated insistence that she be permitted to include her response in her very public personnel file on an important matter of public concern.[3] Defendant informed Plaintiff that her contract was not going to be renewed so there was no reason for Plaintiff to provide a response. When Plaintiff asked why she was being terminated, Grant callously responded, stating that "we don't have to provide a reason". (Doc. # 1 ¶ 29).[4]

Shortly thereafter, on or about May 2018, Plaintiff drafted, a response to the allegations placed in her personnel file and submitted the response to various public officials, including but not limited to: Superintendent Michael Grego, Assistant Superintendent of Human Resources Paula Texel, and Associate Superintendent of Community and Support Services Lori Matway on at least two occasions. (Doc. # 1 ¶ 31). Despite their statutorily defined duties to investigate Plaintiff's claims or to merely include her responses in her personnel file, Defendant's decisionmakers failed to take appropriate action despite Plaintiff's requests for review. (Doc. # 1 ¶ 32). Once again, yet another of Defendant's decisionmakers falsely told Plaintiff that "a response [was] not needed" and unlawfully refused to place Plaintiff's written response to the allegations levied against her in her personnel file. (Doc. # 1 ¶ 33). Plaintiff was not even asked the

---

[4] In fact, Defendant's sudden nonrenewal of Plaintiff's teaching status violated Defendant's own policies and procedures. Per Defendant's own rules and regulations, Defendant's deadline to provide notice of nonrenewal to Plaintiff had already passed and only after she insisted on including responses to Defendant's allegations as prescribed by law. (Doc. # 1 ¶ 30).

rudimentary, "guilty or not guilty". (Doc. # 1 ¶ 34). These statements are public record and are available to be viewed by person and at any time pursuant to Fla. Stat. § 119.01(1).

Furthermore, despite Plaintiff's role as a high-level administrator who had minimal contact with children, Defendant misrepresented the nature of the aforementioned incident in Plaintiff's public personnel file in order to curtail Plaintiff's future career opportunities when Defendant defined Plaintiff's termination as "**Victim Code: Student**" in Plaintiff's personnel file. (Doc. # 1 ¶ 36). As a result of the harm she has suffered, and continues to suffer, Plaintiff brought suit in this Court on April 8, 2020, and seeks damages as a result of Defendant's multiple violations of 42 U.S.C. § 1983.

## ARGUMENT

This Court should deny Defendant's Motion to Dismiss Plaintiff's Complaint because she sufficiently alleged Defendant violated her liberty interests and retaliated against Plaintiff in violation of 42 U.S.C. § 1983 when she tried to exercise her right to speak on a matter of public concern. This right is further strengthened and solidified by Florida statue and no reasonable person could mistake or confuse this right. While the Fourteenth Amendment of the United States Constitution provides that, "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, Defendant violated Plaintiff's liberty interests when its decisionmakers published false statements of a stigmatizing nature attending a governmental employee's discharge without a meaningful opportunity for employee name clearing. (Doc. # 1 ¶ 14). [5] Additionally, Plaintiff plausibly alleged that Defendant's

---

[5] These statements are public record and are available to be viewed by person and at any time pursuant to Fla. Stat. § 119.01(1).

- 4 -

decisionmakers only chose not to renew Plaintiff's contract after she wanted to respond to allegations concerning the Community Schools Model.

Defendant violated Plaintiff's constitutional and statutory rights under color of state law in bad faith, with malicious purpose, in reckless, willful, and wanton disregard of Plaintiff's dignity, and constitutional rights, and in order to silence Plaintiff from speaking on a matter of public concern. As alleged in Plaintiff's Complaint, Defendant condoned the practices that Plaintiff complained about Defendant's gross mismanagement, gross neglect of duty, and violation of its duties to the children of Pinellas County, Florida. (Doc. # 1 ¶ 7)

## I. STANDARD OF REVIEW

On a motion to dismiss, this Court must construe the "factual allegations in the complaint as true and construe them in the light most favorable..." *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). That is, the Court must construe the Complaint "broadly," such that it need only include "enough factual matter to . . . suggest the required element[s]" for a claim. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Accordingly, Defendant's Motion to Dismiss must be denied as Plaintiff's claims could only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted). This plausibility standard is not a "probability requirement." Rather it "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Watts*, 495 F.3d at 1295–96 (citations and internal quotations omitted). Here, Plaintiff's Complaint easily satisfies this liberal standard because her detailed allegations plausibly state a claim that Defendant knowingly violated Plaintiff's liberty interests and retaliated because she attempted to speak on a matter of public concern by terminating her employment.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE SHE WAS NOT REQUIRED TO EXHAUST ANY PURPORTED ADMINISTRATIVE REMEDIES.

Contrary to Defendant's faulty assertions, Plaintiff was not required to exhaust or make use of any of the purported administrative remedies available to her prior to or in lieu of bringing claims for denial of constitutional right in federal court. *Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982) (1982. Federal Courts have been the traditional guardians for rights that may be both constitutional and statutory, whose traditional guardian has been the federal courts. *See McNeese v. Bd. of Educ.*, 373 U.S. 668, 674 (1963) ("Such [constitutional] claims are entitled to be adjudicated in the federal courts"). School boards like Defendant are subject to suit on their contracts by virtue of Fla. Stat. Section 230.22(4).[6] "We reiterate that whether there was activity is involved, the district court must do a searching review of its own."

When presented with a claim that a faculty member was discharged in retaliation for exercising first amendment rights, a federal court does not sit simply to review administrative findings or to measure the procedural regularity of the process." Here, Plaintiff sufficiently and plausibly alleged that Defendant's failed to renew Plaintiff's Contract because she attempted to exercise her statutory and constitutional freedom of speech by requesting to include a response to the allegations Defendant intended on, and ultimately did include, in Plaintiff's personnel file. Defendant's motion intentionally omits the dozens of factual allegations in Plaintiff's Complaint that Plaintiff's was knowingly and with willful and wanton disregard denied Plaintiff her right to

---

[6] Further, Florida courts have held "that the capacity to be sued on [a] contract implies the power to breach [the] contract." *Williams v. Am. Bankers Life Assurance Co.*, 379 So. 2d 119, 119 (Fla. 3d DCA 1979) (suit against school board). "We agree with the rationale underlying this principle and hold further that breach of contract is ordinarily a matter for judicial rather than administrative or quasi-judicial consideration." *Vincent J. Fasano v. Sch. Bd.*, 436 So. 2d 201, 202-03 (Fla. 4th DCA 1983)

- 6 -

include responses to the derogatory statements that Defendant included in her personnel file that is a matter of public record. As such, this Court must deny Defendant's Motion to Dismiss.

### III. THIS COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BECAUSE PLAINTIFF SUFFICENTLY ALLEGED THAT DEFENDANT VIOLATED HER LIBERTY INTEREST UNDER SECTION 1983.

Defendant's Motion to Dismiss must be denied because Defendant's motion intentionally omits the dozens of factual allegations in Plaintiff's Complaint in its motion. Contrary to Defendant's assertions, Plaintiff's responses to what Defendant included in her personnel file that is a matter of public record.[7] Fla. Stat. § 1012.31 provides that:

> (2)(a) Materials relating to work performance, discipline, suspension, or dismissal must be reduced to writing and signed by a person competent to know the facts or make the judgment.
> ...
> (2)(d) **An employee has the right to answer in writing any such materials** [relating to work performance, discipline, suspension, or dismissal] in a personnel file on July 1, 1983, as well as any such materials filed thereafter, **and the answer shall be attached to the file copy**. An employee has the right to request that the district school superintendent or the superintendent's designee make an informal inquiry regarding material in the employee's personnel file which the employee believes to be false. The official who makes the inquiry shall append to the material a written report of his or her findings.

(emphasis added). Despite the plain language of the statute and the stigmatizing nature of the allegations that were set to be included in Plaintiff's public personnel file, Defendant informed her there was "no reason to provide a written response". *See Buxton v. Plant City*, 871 F.2d 1037, 1045–46 (11th Cir. 1989) (holding "that the presence of stigmatizing information placed into the public record by a state entity ... constitutes sufficient publication to implicate the liberty interest under the due process clause").

---

[7] *See also Mt. Healthy*, 429 U.S. at 283, 97 S. Ct. at 574 (even if employee has no "property interest" in employment, [she] may nonetheless state a claim in federal court to reinstatement if the decision not to rehire him was made in retaliation for exercise of First Amendment rights).

In *Buxton*, the court reversed the district court's grant of summary judgment to the department on the officer's 42 U.S.C. § 1983 claim, finding that "a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required." *Buxton*, 871 F.2d at 1046. "Accordingly, a public employer who fails to "provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published," may be liable for a due process violation pursuant to 42 U.S.C. § 1983."

A. **Defendant's Retaliatory Conduct Represents its Official Government Custom or Practice Because it Was Made by Defendant's Authorized Decisionmakers.**

The Supreme Court has held that "[i]f the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A 42 U.S.C. § 1983 plaintiff "has two methods by which to establish a policy: identify either (1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker." *Id*. "Because a [school board] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [school board] has a custom or practice of permitting it and that the [school board]'s custom or practice is 'the moving force [behind] the constitutional violation.'" *Id*. at 133*City of Canton*, 489 U.S. at 389).

Here, despite the severity of the conduct engaged in by Defendant's officials, Defendant's officials were acting in conformity with Defendant's custom and policies of not including employee responses to allegations made by Defendant in their personnel files. The aforementioned employment practices of Defendant are so persistent, widespread, and repetitious that Defendant's

- 8 -

policy makers either knew or should have known of the unlawful employment practices. (Doc. # 1 ¶ 39). In her Complaint, Plaintiff specifically alleged that, at all times relevant, Defendant and its decisionmakers were aware of Plaintiff's right to engage in protected activity. However, it's plausible from the face of Plaintiff's Complaint that they colluded together to deny Plaintiff her statutory and constitutional rights to engage in protected activity. Similarly, in *Handy-Clay v. City of Memphis*, 695 F.3d 531, 541 (6th Cir. 2012), the court that:

> [T]here is enough evidence in the record to support the proposition that the defendants knew of Handy-Clay's protected speech. There is no question that Morris knew about her complaints, because she spoke directly to him multiple times and copied him on her e-mail regarding her final record requests. Although Handy-Clay did not assert that she directly addressed Porter about misconduct and corruption in the City Attorney's office, copies of the record requests attached to the complaint reveal that Porter was indeed included on that e-mail.

*Handy-Clay*, 695 F.3d at 541

Like *Handy-Clay*, Plaintiff has pled sufficient facts to support the proposition that the Defendant's knew of Plaintiff's attempted protected speech. There is no question that Defendant's decisionmakers knew about her complaints because she sent multiple emails multiple times to them and further copied them on emails regarding her response she requested to be included in her personnel file. Defendant's decision to not include Plaintiff's written responses as required by statute was arbitrary, capricious, and meant to sully Plaintiff's good name.

Defendant could have simply placed Plaintiff's responses to the accusations in her personnel file and properly investigated the incident. Instead, Defendants chose to publicly shame and punitively punish Plaintiff for objecting to Defendant's deprivation of her due process rights. (Doc. # 1 ¶ 40). Plaintiff was not provided with an opportunity to be heard as to the truth or falsity of the alleged allegations because Defendant denied Plaintiff her right to respond to the allegations

levied against her in her personnel file. (Doc. # 1 ¶ 34). As such, Defendant's motion to Dismiss must be denied.

### 1. Defendant's Failure to Train its Decisionmakers Demonstrates Defendant's Official Governmental Policy of Adequate Training and Supervision.

Plaintiff can also demonstrate official policy by showing a government policy of inadequate training or supervision. see Okla. City v. Tuttle, 471 U.S. 808 (1985). In this regard, the municipality is deemed liable for its deliberate indifference to the rights of those affected by its policy of inadequate training. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).In certain circumstances, a plaintiff may assert 42 U.S.C. § 1983 claim against a municipality by establishing a government policy of inadequate training or supervision. "A plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *City of Canton*, 489 U.S. at 388.

A showing of deliberate indifference can be established by alleging a pattern of similar constitutional violations by untrained employees. Connick, 131 S. Ct. at 1360. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action— the 'deliberate indifference'—necessary to trigger municipal liability." Connick, 131 S. Ct. at 1360 (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 407 (1997)) (internal quotation marks omitted).

In this case, Plaintiff alleged that Defendant violated Plaintiff's constitutional right, and that this right was clearly established at the time of the alleged violation, such that "a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001). Furthermore,

Plaintiff reported and disclosed in writing and/or verbally violations of rules, regulations and laws to persons both inside and outside of her normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported. (Doc. # 1 ¶ 41). As alleged in Plaintiff's Complaint, Defendant retaliated against Plaintiff under color of state law because Plaintiff exercised her constitutional right to free speech on matters of public concern by nonsensically, and in violation of its own policies and procedures, failing to renew her contract, thereby terminating her employment on or about May 2018. (Doc. # 1 ¶ 42).

### IV. PLAINTIFF PROPERLY ASSERTED A FREE SPEECH RETALIATION CLAIM.

In determining whether the allegations in the Complaint state a claim for relief under 42 U.S.C. § 1983, this Court must consider whether the allegations contained in Plaintiff's Complaint amounted to protected speech. To establish a prima facie case of First Amendment retaliation, a plaintiff must show:

> 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that [her] interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action.

*Akins v. Fulton County*, 420 F.3d 1293, 1303 (11th Cir. 2005). The first two elements of the prima facie case are most important at the motion to dismiss stage, as they are questions of law to be determined by the Court. The final two inquiries involve questions of fact as to causation. At this stage in the proceedings, Plaintiff more than met her pleading requirement as she sufficiently alleged that her termination was in retaliation because she attempted to exercise her protected speech. At the motion to dismiss stage, nothing more is required.

### A. Plaintiff's Attempted Speech Can Easily Be Characterized as a Matter of Public Concern.

In order to determine whether a government employee's speech relates to a matter of public concern, courts must consider the underlying purpose of the speech. Speech is protected when an employee speaks "as a citizen upon matters of public concern," but not when she speaks "as an employee upon matters only of personal interest." *Connick v. Myers*, 461 U.S. 138, 147 (1983). Speech is public, rather than personal, in nature if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146. In evaluating the purpose of speech, courts look to the "content, form, and context of the speech to glean its 'main thrust,'" taking into account that "'[a]n employee's speech will rarely be entirely private or entirely public.'" *Akins*, 420 F.3d at 1304 (quoting *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993)).

In this case, the allegations made by Plaintiff plainly relate to matters of public interest. Here, none of the allegations relate to Plaintiff's personal employment situation, but instead relate to concerns about the proper operation of a government agency. The public has an interest in allowing concerned employees to speak out when there are indications that officials of a public institution are misusing funds or failing to perform their duties. While Plaintiff's speech was made in the context of an internal communication to a superior, rather than in a public forum. Courts have repeatedly held, however, that "a public employee's freedom of speech is not sacrificed merely because the employee 'arranges to communicate privately with his employer rather than to spread his views before the public.'" *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir. 1988).

Plaintiff alleged the she denied the false allegations of wrongdoing and requested to include a thorough response regarding the treatment and handling of Title I cases. As Plaintiff's Complaint points out, her attempted speech was "inexorably intertwined" with Plaintiff's attempt to speak out about mismanagement and wrongdoing. On a motion to dismiss, the Court must accept the allegations of the Complaint as true and conclude that Plaintiff's speech was primarily addressed

to matters of public concern. To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts. . . . Rather, the state of the law at the time of the unconstitutional act must be established sufficiently to give 'fair warning' to the official that his conduct is unlawful." *Akins*, 420 F.3d at 1305 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) In her Complaint, Plaintiff alleged sufficient facts to set forth a violation of a constitutional right and the law was clearly established at the time and Defendant's were on notice that their actions violated Plaintiff's rights.".

In this case, Plaintiff's attempted statements concerned mismanagement in the context of a community services board. In both cases, the "main thrust" of the speech was to address concerns about the waste or misuse of public funds by a public agency. Thus, Defendant was under clear notice to public officials that speech related to concerns about mismanagement and waste of government funds is speech on a matter of public concern. It was only after Plaintiff demanded to include her responses regarding a matter of public concern in her personnel file that Defendant discharged Plaintiff shortly after she brought her concerns to the attention of Defendant's decisionmakers. It is clearly established that the First Amendment's protection for whistleblowers applies when a government employee addresses his concerns privately to his supervisors as well as when he airs them in a public forum. see Kurtz, 855 F.2d at 727.

*Kurtz* clearly establishes that Plaintiff's attempted speech and the fact that her personnel file is public record is protected speech under the First Amendment. Therefore, Defendants could not retaliate against Plaintiff for making such statements. For instance, in *Marcus Holley v. the Seminole County School District, et al.*, 755 F.2d 1492 (11th Cir. 1985), the Eleventh Circuit reversed the district court's grant of summary judgment in favor of defendants on a similar First Amendment claim because the plaintiff claimed that nonrenewal of his contract was the result of

retaliation because Plaintiff engaged in activity protected under the First Amendment. *Marcus Holley v. the Seminole County School District, et al.*, 755 F.2d 1492 (11th Cir. 1985). In *Holley*, the issue was not whether there is objective "cause" to fire an employee, but rather whether the employer was motivated by an unconstitutional desire to discharge an individual in retaliation for his First Amendment activity. *Id.* at 265. Here, the Court held:

> [A] discharged or nonrenewed teacher asserting a claim of First Amendment right under Mt. Healthy is entitled to a de novo hearing in federal court regardless of whether that teacher resorted to an administrative hearing or whether such hearing purported to decide the constitutional issue. The policy enunciated by Sec. 1983 in vesting original jurisdiction for constitutional claims in the district court requires no less.

*Marcus Holley v. the Seminole County School District, et al.*, 755 F.2d 1492 (11th Cir. 1985).

### B. Plaintiff's Interests as a Citizen Subject to A Public Personnel File Outweighed the Unlawful Interests of Defendant.

Once it has been established that the speech in question related to matters of public concern, the Court must conduct the balancing test prescribed in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). The *Pickering* test requires a balancing of the employee's (and the public's) interest in free speech against the government's interest, "in promoting the efficiency of the public services it performs through its employees." *Id.* at 568. In balancing these interests, courts consider:

> (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of speech, and (3) the context within which the speech was made.

*Stanley v. City of Dalton*, 219 F.3d 1280, 1289 (11th Cir. 2000) (quoting *Bryson v. Waycross*, 888 F.2d 1562, 1567 (11th Cir. 1989)). The balance in this case favors Plaintiff. "A 'core concern' of the First Amendment is the protection of whistleblowers who report government wrongdoing." *Akins*, 420 F.3d at 1304. Plaintiff's interest in this speech is therefore high, while ABHS' interest in preventing such speech is low. As in *Akins*, "preventing [Plaintiff's] speech would not seem to aid the government's interest in efficiency, since the speech would bring the alleged wrongful

practices to light and lead to more efficient provision of public services." Id. Based on the pleadings in this case, there is no indication that Plaintiff's attempted speech impeded the government's ability to perform its duties. Plaintiff expressed her concerns through the proper chain of command. Plaintiff did not attempt to instigate other employees, use her concerns as an opportunity to grandstand, or stir an unnecessary public scandal. Under both the *Connick* public concern test and the *Pickering* balancing test, the facts as alleged in Plaintiff's Complaint establish that Plaintiff's speech was protected under the First Amendment and this Court should deny Defendant's Motion to Dismiss.

### C. Plaintiff Sufficiently Alleged That Her Attempted Speech Played A Substantial or Motivating Role in Defendant's Decision to Take Adverse Employment Action Against Plaintiff.

This Court should also deny Defendant's Motion to Dismiss because Plaintiff alleged that the Defendant's sole motivation for not renewing her contract was in retaliation for her attempted speech that the government unconstitutionally denied. Whether this was the true motivation, or whether another motivation would have led to the discharge in the absence of a retaliatory motive, will be a question of fact to be explored in discovery and determined by a finder of fact. *Id.* at 1303. Here, Plaintiff's personnel file will always be subject to an open records request and will always be a matter of public record. With all elements of the prima facie case met, Plaintiff's Complaint is sufficient to state a claim of First Amendment retaliation under 42 U.S.C. § 1983. Therefore, since Plaintiff's Complaint states a claim for which relief may be granted this Court must deny Defendant's Motion to Dismiss.

### V. LEAVE TO AMEND

If for any reason this Honorable Court is inclined to grant any part of Defendant's Motion to Dismiss Plaintiff's Complaint, Plaintiff respectfully requests that she be given leave to file an Amended Complaint in order to further flesh out the factual allegations regarding her claims.

## CONCLUSION

**WHEREFORE**, for all the aforementioned reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss and order Defendant to respond to the allegations of Plaintiff's Complaint in addition to any other such relief as this Court deems just and proper.

**DATED** on this June 17, 2020.

Respectfully submitted,

/s/ Patrick K. Elliott
**PATRICK K. ELLIOTT**
Florida. Bar Number: 1000970
**THE LAW OFFICE OF PATRICK K. ELLIOTT, PLLC**
100 S. Ashley Drive, Suite 600
Tampa, FL 33602
Direct Dial: (813) 379-3090
Facsimile:  (813) 433-5126
Email: elliottp@employmentandconsumerlaw.com
Email: assistant@employmentandconsumerlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Patrick K. Elliott
**PATRICK K. ELLIOTT**