## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JENNIFER HYKES,**

      **Plaintiff,**

**v.**                                                      **CASE No.:**               **8:20-cv-00806-SPF**

**THE SCHOOL BOARD OF**
**PINELLAS COUNTY, FLORIDA,**

      **Defendant.**

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, JENNIFER HYKES, (hereinafter "Plaintiff" or "Ms. Hykes"), by and through the undersigned counsel hereby files her Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice and states in support, as follows:

1.      Plaintiff Jennifer M. Hykes ("Plaintiff") filed this lawsuit against her former employer, Defendant School Board of Pinellas County, Florida ("Defendant") pursuant to 42 U.S.C. § 1983 for violations of her due process and First Amendment rights relating to her unlawful termination in retaliation for requesting to respond to allegations Defendant levied against her and placed in her personnel file. Furthermore, Defendant failed to provide Plaintiff with an opportunity to be heard as to the truth or falsity of the allegations placed in her personnel file and failed to give her the opportunity to clear her name.

2.      In response to the Defendant' Motion to dismiss the initial Complaint filed by HYKES [Doc.11], this Court entered an Order dismissing Count I of the original complaint stating:

> A claimant may invoke the procedural protection of the Due Process Clause
> by alleging a deprivation of a liberty interest based on defamation "plus"
> the violation of some more tangible interest. *Paul*, 424 U.S. at 701-02.

Courts now refer to this test as the "stigma plus" test. "In considering what satisfies the 'plus' prong of this analysis, the *Paul* Court looked at whether state action had significantly altered or extinguished 'a right or status previously recognized by state law." *Behrens*, at 1255 (quoting *Paul*, at 711). The Eleventh Circuit has developed a six-factor test for plaintiffs to satisfy when reputational damage is allegedly sustained in connection with a termination of employment: (1) false statement, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing. *Cotton*, 216 F.3d at 1330 (quoting *Warren v. Crawford*, 927 F.2d 559, 565 (11th Cir. 1991)); *Buxton v. City of Plant City*, 871 F.2d 1037, 1042-43 (11th Cir. 1989).

To establish stigmatization, a plaintiff must show that the charges against her seriously damaged her standing and association in the community or foreclosed her freedom to take advantage of other employment opportunities, and that the charges were false. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972). Allegations concerning work performance do not rise to the level of a constitutional violation. *Id*. For instance, in *Siegert*, the plaintiff claimed infringement of his liberty interest after his former supervisor wrote a letter to a potential employer critical of the plaintiff's work performance that resulted in the plaintiff not receiving a position at another hospital. *Siegert v. Gilley*, 500 U.S. at 233-34. The Supreme Court held that "the statements contained in a letter would undoubtedly damage the reputation of one in his position and impair future employment prospects" but did not state a claim for denial of a constitutional right. *Id*; *see also Sullivan v. School Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1186 (11th Cir. 1985) (citing *Roth*, *supra*) (holding that the written reasons for plaintiff's nonrenewal, that she was unable to perform her job because she was adversarial and unable to get along with and gain respect of her coworkers, failed to implicate a liberty interest because "[w]e do not find the comments regarding Ms. Sullivan's nonrenewal to be comments that place 'a person's good name, reputation, honor, or integrity … at stake' or that foreclose Ms. Sullivan's 'freedom to take advantage of other employment opportunities'"); *Triplett v. City of Tarpon Springs*, case no. 8:06-cv-1721-T-TGW, 2009 WL 320734 (M.D. Fla. 2009) (dismissing plaintiff's claim as not rising to level of a constitutional liberty interest violation where plaintiff alleged his reputation was damaged by supervisor's "trumped up false charges of refusal to perform work, lack of productivity, lack of good workmanship, and not being up to standards of performance"). Accordingly, accepting all factual allegations as true and construing them in Plaintiff's favor, Plaintiff has failed to state a plausible claim for relief under the stigma-plus test as she has not sufficiently pled that Defendant's statements were "of a stigmatizing nature."

3.      In response to the Defendant' Motion to dismiss the initial Complaint filed by

HYKES [Doc.11], regarding Plaintiff's allegations that Defendant failed to inform Plaintiff of her

right to clear her name (Complaint, ¶¶31-35) this Court entered an Order dismissing Count I of the

original complaint stating:

> In her complaint, [Plaintiff] fails to allege an absence of adequate state
> remedies to cure Defendant's failure to provide a name-clearing hearing.
> When a plaintiff fails to allege an absence of available state remedies,
> dismissal is warranted. *See generally Ladd, supra*, 681 F. App'x. at 818-19
> (affirming district court's dismissal of plaintiff's § 1983 claim because
> plaintiff failed to allege an absence of adequate state remedies to cure the
> failure to provide a name-clearing hearing); *JERMC LTD v. Town of
> Redington Shores*, case no. 8:19-cv-688-T-60AAS, 2020 WL 1974224
> (M.D. Fla. Apr. 24, 2020) (dismissing procedural due process claim, finding
> "it is unclear whether plaintiffs could make the necessary allegations since
> it appears that they never actually pursued state remedies"); *Clewison
> Commons, LLC v. City of Clewison*, case no. 2:18-cv-339-FtM-38MRM,
> 2019 WL 2515830, *3 (M.D. Fla. June 18, 2019) (dismissing procedural
> due process claim, finding "[i]f a plaintiff fails to avail itself of adequate
> state remedies, that plaintiff 'cannot rely on that failure to claim that the
> state deprived [it] of procedural due process'") (citation omitted); *Mackroy-
> Snell v. Lake Wales Charter Schools*, case no. 8:06-cv-1380-T-30MAP,
> 2006 WL 2864317 (M.D. Fla. Oct. 5, 2006) (finding court lacked subject
> matter jurisdiction to entertain plaintiff's procedural due process claim
> because "a state court remedy was available to plaintiff but she failed to
> pursue it" as "Florida circuit courts routinely reviewed Florida school board
> decisions involving termination of employees"); *Hallberg v. Pasco Cnty.*,
> case no. 95-1354-CIV-T-17A, 1996 WL 153673, *4 (M.D. Fla. Mar. 18,
> 1996) (dismissing claim that defendant violated property and liberty
> interests in plaintiff's work reputation and good name without due process
> of law where plaintiff failed to allege an absence of state remedies). As a
> result, Plaintiff's claim must be dismissed. Plaintiff then filed an Amended
> Complaint that addressed and corrected the items raised by Defendant.
> Defendant agreed the Amended Complaint addressed these issues and
> raised no objection to the Amended Complaint.

4.      In response to this Court's Order, HYKES filed an Amended Complaint alleging:

> a.      Defendant violated Plaintiff's due process rights under the Fourteenth
>         Amendment and acted in accordance with its official policies and customs
>         by publishing false statements of a stigmatizing nature attending a
>         governmental employee's discharge that were made public by the

governmental employer without a meaningful opportunity for employee name clearing. [Doc. 26 at ¶14];

b.   Defendant ambushed Plaintiff with false accusations relating to her job performance. Defendant did not provide notice to Plaintiff that the meeting was disciplinary or that the topics to be discussed were in any way related to her job performance. The meeting occurred on April 30, 2018. [Doc. 26 at ¶20];

c.   Upon reading the Conference Summary, Plaintiff immediately realized that her responses to Defendant's questions were largely omitted in the Conference Summary. Plaintiff asked why the Conference Summary stated "CC: Personnel File" if the earlier meeting was not disciplinary. Grant simply replied that it would be included in Plaintiff's personnel file because "that is the procedure for written summaries." [Doc. 26 at ¶25];

d.   Plaintiff objected and informed Grant that, pursuant to Florida law, since the summary was going into Plaintiff's personnel file, she intended to file a written response. [Doc. 26 at ¶26];

e.   Despite the plain language of the statute and the stigmatizing nature of the allegations that were set to be included in Plaintiff's public personnel file, Defendant informed her there was "no reason to provide a written response." [Doc. 26 at ¶28];

f.   When Plaintiff further asserted her right to respond to the allegations, Defendant terminated Plaintiff's employment in retaliation for her request to include a response to the allegations that Defendant had levied against her. Defendant informed Plaintiff that her contract was not going to be renewed so there was no reason for Plaintiff to provide a response. When Plaintiff asked why she was being terminated, Grant callously responded, stating that "we don't have to provide a reason." [Doc. 26 at ¶29];

g.   On or about May 2018, Plaintiff drafted, a response to the allegations placed in her personnel file and submitted the response to various public officials, including but not limited to: Superintendent Michael Grego, Assistant Superintendent of Human Resources, Paula Texel, and Associate Superintendent of Community and Support Services, Felita Grant, on at least two occasions. [Doc. 26 at ¶31];

h.   Defendant again informed Plaintiff that "a response is not needed" and unlawfully refused to place Plaintiff's response to the allegations levied against her in her personnel file. [Doc. 26 at ¶33];

i.   By refusing to place Plaintiff's response to Defendant's written accusations in her personnel file, Defendant did not provide Plaintiff with an

opportunity to be heard as to the truth or falsity of the alleged allegations, nor was Plaintiff given an opportunity to clear her name. Plaintiff was not even asked the rudimentary, "guilty or not guilty." [Doc. 26 at ¶34];

j.      Defendant misrepresented the nature of Plaintiff's termination in Plaintiff's public personnel file in order to curtail Plaintiff's future career opportunities with the State. Defendant did this by defining Plaintiff's termination as "Victim Code: Student" in Plaintiff's personnel file. This designation would effectively prevent Plaintiff from ever being rehired by the State. Defendant did this despite knowing Plaintiff had minimal contact with children in her role as a high-level administrator. [Doc. 26 at ¶36];

k.      These statements are public record and are available to be viewed by person and at any time pursuant to Fla. Stat. § 119.01(1). See also Fla. Stat. § 119.07(1)(a), "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee." [Doc. 26 at ¶38];

l.      Defendant's decision to not include Plaintiff's written responses as required by statute was arbitrary, capricious, and meant to sully Plaintiff's good name. Defendant could have simply placed Plaintiff's responses to the accusations in her personnel file and properly investigated the incident. Instead, Defendants chose to publicly shame and punitively punish Plaintiff for objecting to Defendant's deprivation of her due process rights. [Doc. 26 at ¶40];

m.      Defendant terminated Plaintiff from her public employment in May 2018. [Doc. 26 at ¶44];

n.      Defendant falsely defined Plaintiff's termination as "Victim Code: Student" in Plaintiff's personnel file. [Doc. 26 at ¶45];

o.      Defendant's decision to falsely define Plaintiff's termination as "Victim Code: Student" in her public personnel file was done to disgrace Plaintiff, to damage her reputation, and to block all future employment prospects with the State. [Doc. 26 at ¶46];

p.      Defendant falsely, maliciously, and with full intent, alleged that Plaintiff had committed a grievous offense and was otherwise not fit for her position. [Doc. 26 at ¶47];

q.      Defendant's allegations were unfounded and false. [Doc. 26 at ¶48];

r.      In May 2018, Plaintiff drafted, a response to the allegations placed in her personnel file and submitted the response to various public officials. [Doc. 26 at ¶50];

s.      Defendant's officials, despite their statutorily defined duty, failed to attach Plaintiff's response in her personnel file. Instead, Defendant informed Plaintiff that "a response is not needed" and unlawfully refused to place Plaintiff's response to the allegations levied against her in her personnel file. [Doc. 26 at ¶51];

t.      By refusing to place Plaintiff's response to Defendant's written accusations in her personnel file, Plaintiff was not provided with an opportunity to be heard as to the truth or falsity of the alleged allegations, nor was Plaintiff given an opportunity to clear her name. [Doc. 26 at ¶52];

u.      Defendant publicly communicated false and unfounded allegations of a stigmatizing nature and deprived Plaintiff of her constitutionally protected liberty interest in her good name and her reputation as being a person of honor and integrity by refusing to attach Plaintiff's response in her personnel file. [Doc. 26 at ¶53];

v.      Defendant has caused substantial damage to Plaintiff's reputation in the community. [Doc. 26 at ¶54];

w.      Defendant deprived Plaintiff of her constitutionally protected liberty interest without due process of law in violation of the Fourteenth Amendment to the United States Constitution by failing to attach her response to the stigmatizing allegations levied against her in her personnel file. [Doc. 26 at ¶55]; and

x.      As a result, Plaintiff's ability to earn a living in the local community has been severely compromised. [Doc. 26 at ¶56].

5.      In response to the Defendant' Motion to dismiss the initial Complaint filed by HYKES [Doc.11], this Court entered an Order dismissing Count II of the original complaint stating:

> Plaintiff has failed to sufficiently state a First Amendment claim in Count II and dismissal is appropriate. *See generally Hollis*, 782 F. App'x. at 958 (finding district court did not err in dismissing Hollis's First Amendment claim as "Hollis's speech regarding the dissemination of his [Social Security Number] and his pay raise were not matters of public concern because they did not implicate social, political, or other issues of importance to the community, but rather related to matters of his own personal interest.

… Also, Hollis did not voice his concerns outside of his workplace."); *Gainer v. City of Winter Haven*, case no. 8:00-cv-1098-T17A, 134 F.Supp. 2d 1295, 1306 (M.D. Fla. Nov. 8, 2000) (dismissing plaintiff's first amendment claim as plaintiff's speech, proffered in defense of a recommendation that she be terminated, was motivated by her self-interest in improving the conditions of her employment and did not involve a matter of public concern). In this case, Plaintiff has neither identified her speech nor established that her speech related to matters of public concern.

6.  In response to this Court's Order, HYKES filed an Amended Complaint alleging:

a.  On or about April 27, 2018, Plaintiff requested a meeting with her supervisor, Defendant's director of its Title I program, Felita Grant, regarding the Coalition for Community Schools National Conference. [Doc. 26 at ¶16];

b.  Although the conference and the cost associated with it were previously approved by Defendant, Defendant abruptly informed Plaintiff that it would not be sending the two community representatives to the conference. [Doc. 26 at ¶17];

c.  Plaintiff expressed legitimate concerns regarding how Defendant's decision could negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives and again requested a meeting. Grant then scheduled a meeting with Plaintiff. [Doc. 26 at ¶18];

d.  Plaintiff assumed the meeting was to discuss the negative implications associated with withdrawing from the conference as she was the one who originally requested it. [Doc. 26 at ¶19];

e.  However, instead of discussing the conference, Defendant ambushed Plaintiff with false accusations relating to her job performance. Defendant did not provide notice to Plaintiff that the meeting was disciplinary or that the topics to be discussed were in any way related to her job performance. The meeting occurred on April 30, 2018. [Doc. 26 at ¶20];

f.  Defendant retaliated against Plaintiff because Plaintiff exercised her constitutional right to free speech on matters of public concern by terminating her employment on or about May 2018. [Doc. 26 at ¶42];

g.  Plaintiff objected to Defendant's decision to not attend the Coalition for Community Schools National Conference; despite the conference and the

cost associated with it being previously approved by Defendant. [Doc. 26 at ¶62];

h.  Plaintiff expressed legitimate public concerns regarding how Defendant's decision could negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives. [Doc. 26 at ¶63];

i.  Plaintiff engaged in protected activity by reporting and opposing Defendant's decision to not attend the Coalition for Community Schools National Conference. [Doc. 26 at ¶65];

j.  Defendant's actions were "under color" of state law. [Doc. 26 at ¶66];

k.  Defendant's deprivation of Plaintiff's constitutionally protected rights was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. Sch. Bd.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citations omitted). [Doc. 26 at ¶67];

l.  "A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted), cert. denied, 522 U.S. 1075 (1998). [Doc. 26 at ¶68];

m.  In retaliation for Plaintiff's exercise of her constitutional right to freedom of speech, Defendant terminated Plaintiff's employment on or about May 2018. [Doc. 26 at ¶69];

n.  Plaintiff's protected speech was a motivating factor in Defendant's decision to terminate Plaintiff's employment. [Doc. 26 at ¶70];

7.  In a renewed Motion to Dismiss, the Defendant claims that Count I of the Amended Complaint is "substantially identical to the original complaint and merely rearranges the allegations in paragraphs 44 through 47 but nevertheless repeats what has already been alleged and dismissed by this Court." [Doc. 27].

8.  In a renewed Motion to Dismiss, the Defendant recognizes Plaintiff objected to her

supervisor's decision to cancel a conference that she and another employee were scheduled to attend. As stated in Count II of the Amended Complaint, Plaintiff alleges that her objection raised "legitimate public concerns regarding how the Defendant's decision would negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives." [Doc. 27].

9.     For the reasons stated herein, HYKES has stated a claim for which relief may be granted and accordingly, the Defendant's Motion to Dismiss the Amended Complaint should be denied.

## MEMORADUM OF LAW

### I.     Standard of Review of a Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the `grounds' of his `entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). See, *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).

Though the Supreme Court clarified pleading standards in *Twombly* and *Iqbal*, neither "require[s] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 569 (2007). Indeed, in *Twombly*, the Supreme Court specifically stated it did not overrule its previous holding in *Swiekiewicz v. Sorema, N.A.,* 534

U.S. 506 (2002) which held that a plaintiff need not allege specific facts to establish a prima facie case. See *Twombly*, 550 U.S. at 569.  Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. Though the plausibility standard requires more than a "sheer possibility" of actionable conduct, it is also not a "probability requirement" that unlawful conduct took place. *Id*. The standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. But Rule 12(b)(6) does not allow dismissal of a complaint "simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Florida Int'l Univ*., 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly* at 556). In reviewing a motion to dismiss, "the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004).

Accordingly, Defendant's Motion to Dismiss must be denied as Plaintiff's claims could only be dismissed if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (citations omitted). Here, Plaintiff's Complaint easily satisfies this liberal standard because her detailed allegations plausibly state a claim that Defendant knowingly violated Plaintiff's liberty interests and retaliated because she attempted to speak on a matter of public concern by terminating her employment.

## II.     Violation of 42 U.S.C. § 1983 Deprivation of Liberty Interest

A claimant may invoke the procedural protection of the Due Process Clause by alleging a deprivation of a liberty interest based on defamation "plus" the violation of some more tangible interest. *Paul v. Davis*, 424 U.S. 693, 701-02 (1976). Courts now refer to this test as the "stigma

plus" test." In considering what satisfies the 'plus' prong of this analysis, the *Paul* Court looked at whether state action had significantly altered or extinguished 'a right or status previously recognized by state law." *Behrens*, at 1255 (quoting *Paul*, at 711). The Eleventh Circuit has developed a six-factor test for plaintiffs to satisfy when reputational damage is allegedly sustained in connection with a termination of employment: (1) false statement, (2) of a stigmatizing nature, (3) attending governmental employee's discharge, (4) was made public, (5) by governmental employer, (6) without meaningful opportunity for an employee name-clearing hearing. *Cotton,* 216 F.3d at 1330 (quoting *Warren v. Crawford*, 927 F.2d 559, 565 (11th Cir. 1991)); *Buxton v. City of Plant City*, 871 F.2d 1037, 1042-43 (11th Cir. 1989).

Defendant is a political subdivision possessing authority under Article IX, Section 4(b), Fla. Const., to operate, control, and supervise all free public schools located in Pinellas County, Florida and with the home rule authority to exercise any power except as expressly prohibited by the State Constitution and general law. Plaintiff's Amended Complaint alleges that Defendant misrepresented the nature of Plaintiff's termination in Plaintiff's public personnel file to curtail Plaintiff's future career opportunities with the State. Defendant did this by falsely defining Plaintiff's termination as "Victim Code: Student" in Plaintiff's personnel file. These statements are public record and are available to be viewed by person and at any time pursuant to Fla. Stat. § 119.01(1). See also Fla. Stat. § 119.07(1)(a), "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee."

Defendant's decision to falsely define Plaintiff's termination as "Victim Code: Student" in her public personnel file was done to disgrace Plaintiff, to damage her reputation, and to block all

future employment prospects with the State. Defendant did this despite knowing Plaintiff had minimal contact with children in her role as a high-level administrator. Plaintiff objected and informed Defendant that, pursuant to Florida law, since the summary was going into Plaintiff's personnel file, she intended to file a written response. Despite the plain language of the statute and the stigmatizing nature of the allegations that were set to be included in Plaintiff's public personnel file, Defendant informed her there was "no reason to provide a written response."

### III.    Due Process Right to a Hearing

The dismissal of a governmental employee accompanied by a charge against her that might seriously damage her standing and associations in her community would qualify as something the government is doing to her to trigger the due process right to a hearing during which the employee could refute the charges and publicly clear her name. Even if the accusations did not actually cause the individual's discharge, the defamatory and stigmatizing charges implicate the liberty interests if they occurred during the termination of employment. *See Owen v. Independence*, 445 U.S. 622, 633 (1980). *See also Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where the state attaches a badge of infamy to the citizen, due process comes into play. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential.").

In *Buxton*, the court reversed the district court's grant of summary judgment to the department on the officer's 42 U.S.C. § 1983 claim, finding that "a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required." *Buxton v. Plant City*, 871 F.2d 1037, 1046 (11th Cir. 1989).

When the state refuses to provide a process sufficient to remedy the procedural deprivation

12

a constitutional violation actionable under section 1983 arises." *Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000)* (citing *McKinney v, Pate*, 20 F.3d at 1550, 1557 (11th Cir. 1994)); *see also Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted) ("In procedural due process claim "a deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.").

On April 30, 2018, Defendant ambushed Plaintiff with false accusations relating to her job performance. Defendant did not provide notice to Plaintiff that the meeting was disciplinary or that the topics to be discussed were in any way related to her job performance. The next day, Plaintiff was then called back to Grant's office to review and sign a copy of the "Conference Summary" regarding the meeting that occurred the previous day. The conference summary, written and prepared by Defendant, did not indicate to Plaintiff that her employment would be terminated. Upon reading the Conference Summary, Plaintiff immediately realized that her responses to Defendant's questions were largely omitted in the Conference Summary. Plaintiff asked why the Conference Summary stated "CC: Personnel File" if the earlier meeting was not disciplinary. Grant simply replied that it would be included in Plaintiff's personnel file because "that is the procedure for written summaries."

Plaintiff objected and informed Grant that, pursuant to Florida law, since the summary was going into Plaintiff's personnel file, she intended to file a written response[1]. Despite the plain

---

[1] Pursuant to Florida Stat. § 1012.31 provides that:

> (2)(a) Materials relating to work performance, discipline, suspension, or dismissal must be reduced to writing and signed by a person competent to know the facts or make the judgment.
>
> …
>
> (2)(d) **An employee has the right to answer in writing any such materials** [relating to work performance, discipline, suspension, or dismissal] in a personnel file on July 1, 1983, as well as any such materials filed thereafter, **and the answer shall be attached to the file copy**. An employee has the right to request that the district school superintendent or the superintendent's designee

language of the statute and the stigmatizing nature of the allegations that were set to be included in Plaintiff's public personnel file, Defendant informed her there was "no reason to provide a written response." When Plaintiff further asserted her right to respond to the allegations, Defendant terminated Plaintiff's employment in retaliation for her request to include a response to the allegations that Defendant had levied against her. Defendant informed Plaintiff that her contract was not going to be renewed so there was no reason for Plaintiff to provide a response. When Plaintiff asked why she was being terminated, Defendant callously responded, stating that "we don't have to provide a reason."

On or about May 2018, Plaintiff drafted, a response to the allegations placed in her personnel file and submitted the response to various public officials, including but not limited to: Superintendent Michael Grego, Assistant Superintendent of Human Resources, Paula Texel, and Associate Superintendent of Community and Support Services, Felita Grant, on at least two occasions. Defendant's officials, despite their statutorily defined duty to investigate Plaintiff's alleged infringement of her civil rights, failed to take appropriate action despite Plaintiff's requests for review. Instead, Defendant again informed Plaintiff that "a response is not needed" and unlawfully refused to place Plaintiff's response to the allegations levied against her in her personnel file. By refusing to place Plaintiff's response to Defendant's written accusations in her personnel file, Defendant did not provide Plaintiff with an opportunity to be heard as to the truth or falsity of the alleged allegations, nor was Plaintiff given an opportunity to clear her name.

---

make an informal inquiry regarding material in the employee's personnel file which the employee believes to be false. The official who makes the inquiry shall append to the material a written report of his or her findings.
(emphasis added).

IV.     **Violation of 42 U.S.C. § 1983 Freedom of Speech**

"The First Amendment prohibits public employers from demoting or discharging an employee in retaliation for the employee's protected speech." *Hollis v. Western Academy Charter, Inc.*, 782 F. App'x. 951, 957 (11th Cir. 2019) (citing *Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993)). The Eleventh Circuit applies a four-part test to determine whether an employee has suffered a retaliation: 1) whether the employee's speech involves a matter of public concern; 2) if so, whether the employee's First Amendment interests outweighed the state's interests as an employer; 3) whether the employee's speech played a substantial part in the state's decision to demote or terminate the employee; and 4) whether the state would have reached the same decision in the absence of the protected speech. *Id.* (citing *Morgan*, at 754). To determine whether speech satisfies the threshold "public concern" element, the Court is tasked with analyzing its "content, form, and context of a given statement, as revealed by the whole record." *Id.*

> Courts consider, among other factors, whether the employee spoke on behalf of the public as a citizen or for himself as an employee, and whether the employee attempted to make his concerns public. Speech involves a matter of public concern when it relates to a 'matter of political, social, or other concern to the community' but not when it involves only a matter of personal interest to the employee.

*Id.* (quoting *Morgan*, at 754). The question is one of law, not fact. *Gonzalez v. Lee Cnty. Housing Auth.*, 161 F.3d 1290, 1294-95 (11th Cir. 1998) (citing *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983)). Because an employee's speech will rarely be entirely private or entirely public, the "main thrust" of the employee's speech is the relevant inquiry. Thus, the important question is whether the employee spoke primarily as a citizen on behalf of the public or primarily as an employee upon matters of personal interests. *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (citing *Connick*, 461 U.S. at 147-48; *Morgan*, 6 F.3d at 754-55) ("[T]he relevant inquiry is not whether

the public would be interested in the topic of the speech at issue but rather is whether the purpose of [the employee's] speech was to raise issues of public concern.").

On or about April 27, 2018, Plaintiff requested a meeting with her supervisor, Defendant's director of its Title I program, Felita Grant, regarding the Coalition for Community Schools[2] National Conference. Although the conference and the cost associated with it were previously approved by Defendant, Defendant abruptly informed Plaintiff that it would not be sending the two community representatives to the conference. Plaintiff objected to Defendant's decision to not attend the Coalition for Community Schools National Conference. Plaintiff expressed legitimate concerns regarding how Defendant's decision could negatively impact Defendant's relationships with its partners in Defendant's community schools' initiatives and again requested a meeting.

Plaintiff engaged in protected activity by reporting and opposing Defendant's decision to not attend the Coalition for Community Schools National Conference.[3] Defendant's actions were "under color" of state law. In retaliation for Plaintiff's exercise of her constitutional right to freedom of speech, Defendant terminated Plaintiff's employment on or about May 2018. Prior to her termination, Plaintiff had continually worked for the Florida public system since August 2003. During the time she worked with Defendant, Plaintiff satisfactorily performed the responsibilities of her position in a competent manner and met the legitimate expectations of her employer.

---

[2] A community school is both a place and a set of partnerships between the school and other community resources. Its integrated focus on academics, health and social services, youth and community development, and community engagement leads to improved student learning, stronger families, and healthier communities. Community schools offer a curriculum that emphasizes real-world learning and community problem-solving. Schools become centers of the community and are open to everyone – all day, every day, evenings, and weekends. Community schools always start with a set of results they want to achieve (e.g., decreasing early chronic absenteeism, improving graduation rates, and improving student achievement).  Using a results framework (sometimes called a logic model), they then organize the community around agreed-upon results and identify the resources to achieve them.

[3] See Tindal at 1539; see also Connick v. Myers, 103 S. Ct. 1684 (1983) "Plaintiff's speech clearly involves matter of public concern because the testimony "brought to light actual or potential wrongdoing."

Plaintiff's protected speech was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

**V.      Conclusion**

For the reasons stated herein, Plaintiff HYKES requests this Court to deny Defendant's Motion to Dismiss the Amended Complaint. In the alternative, should this Court believe that there is a defect in the Amended Complaint, Plaintiff requests leave to file a Second Amended Complaint as warranted.

Respectfully submitted,

*/s Jason W. Imler*_____
JASON W. IMLER, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 4, 2021, a true and correct copy of the foregoing

document has been served via e-mail to the following:

**Laurie A. Dart, Esq.**
301 Fourth Street SW
Largo, Florida 33779
<u>dartl@pcsb.org</u>

<u>/s Jason W. Imler</u>
JASON W. IMLER, Esq.
Florida Bar No. 1004422
Gary L. Printy, Jr., Esq.
Florida Bar No. 41956
**Printy & Printy, P.A.**
3411 W Fletcher Ave, Ste A
Tampa, Florida 33618
(P): (813) 434-0649
(F): (813) 423-6543
<u>garyjr@printylawfirm.com</u>
<u>jason.imler@printylawfirm.com</u>
<u>toni.harrold@printylawfirm.com</u>
<u>wanda.butler@printylawfirm.com</u>
*Attorney for Plaintiff JENNIFER HYKES*
